# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANEL, INC.<br><br>                Plaintiff,<br><br>v.<br><br>VILLO & CO., LLC and NEELY G. MULLINS,<br><br>                Defendant. | Civil Action No.  23-cv-6781<br><br><br>**COMPLAINT** |

Plaintiff Chanel, Inc. ("Chanel"), by and through its undersigned counsel, files this Complaint ("Complaint") against Defendant Villo & Co., LLC and Defendant Neely G. Mullins (collectively, "Defendants"), and in support, alleges as follows:

## <u>INTRODUCTION</u>

1.      This action arises from Defendants' improper business practices, including their ongoing, unauthorized misappropriation of Chanel's iconic CHANEL and interlocking CC Monogram trademarks (the "CHANEL Marks"), in connection with their creation and sale of costume jewelry.  Defendants purport to sell "100% authentic" and "designer" items in an attempt to deceive consumers into falsely believing that their products are somehow associated or affiliated with Chanel or that parts of the products are directly obtained from Chanel.

2.      None of Defendants' products or component parts of such products bearing the iconic CHANEL Marks are authenticated by Chanel, endorsed by Chanel, or at all associated with Chanel.  Yet, Defendants understand that their products are infinitely more valuable to consumers when bearing Chanel's immediately recognized, highly sought after, CHANEL Marks.

3.      Defendants are fully aware that they are not authorized to repurpose Chanel items, such as buttons, to create new commercial items.  Yet, despite repeated notices, Defendants deliberately continued to do so.  Defendants also have sold jewelry falsely purporting to be "repurposed" elements of genuine Chanel items that were actually never used in genuine Chanel products.

4.      Defendants have made multiple representations to Chanel that they would discontinue and cease manufacture and sale of the infringing products.  Instead, Defendants have rebranded and created new social media accounts and websites in an attempt to conceal their continued misappropriation of the CHANEL Marks.  These attempts have failed, however, as Chanel is well aware that Defendant Villo & Co., Inc.'s new, additional online presence is "VCC Jewel" and that Defendants have continued to promote and sell their products by unlawfully trading on the recognition and commercial value of the CHANEL Marks through both Villo & Co. and VCC Jewel.

5.      Based upon Defendants' repeated and willful misconduct, Chanel asserts claims for counterfeiting under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and false endorsement and association under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); false advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); trademark infringement and unfair competition under the common law of New York; false advertising under Section 350 of the New York General Business Law; and trademark dilution under Section 360-l of the New York General Business Law.  Plaintiff seeks injunctive relief, Defendants' profits

derived from the sale of the infringing products, monetary damages, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## PARTIES

6.       Plaintiff, Chanel, is a corporation organized and existing under the laws of the State of New York with a principal place of business at 9 West 57th Street, New York, New York 10019.

7.       Upon information and belief, Defendant Villo & Co., LLC ("Villo") is a Texas limited liability company with a business address at 170 Greenview Lane, Van Alsytyne, Texas 75495, and is owned by Defendant Neely G. Mullins.  Upon information and belief, Villo also does business under the name VCC Jewels Jewelry.

8.       Upon information and belief, Defendant Neely G. Mullins ("Mullins") is an individual who is the owner, Registered Agent, and Managing Member of Villo, with business addresses located at 9330 Emberglow Lane, Dallas, Texas 75243.  Upon information and belief, Mullins recently moved her residence to an address located at 360 Ridge Road, Columbus, Mississippi 39705.

9.       Upon information and belief, Mullins directs and controls Villo's conduct, including the conduct alleged herein.  Upon further information and belief, Mullins is the principal architect of Villo's infringement of Chanel's products and is a moving, active, and conscious force behind Villo and its product designs.  Upon information and belief, Mullins "designs" and/or creates the products at issue in this Complaint and promotes the business and its infringing and/or counterfeit products on her personal social media accounts.  She attends art festivals and "pop up" shops around the country to promote and sell the infringing and/or counterfeit products bearing the CHANEL Marks.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121, and under Sections 1331, 1338(a), and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a), and 1338(b).  The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

11.     This Court has personal jurisdiction over Defendants under Section 301 and/or 302 of the New York Civil Practice Laws and Rules because: Defendants conduct, transact, and solicit business in this district, including by selling the products at issue to consumers in this district and shipping such products to this district; Defendants operate an interactive website and multiple social media platforms that offer Defendants' infringing products for sale to consumers in this district; and The events giving rise to this Complaint occurred in this state and/or had effects in this state, and Chanel is being harmed in this jurisdiction.

12.     Venue is proper in this district pursuant to Section 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and (c), because: Defendants are subject to personal jurisdiction in this district due to their transacting of business herein, including shipping and selling infringing products in and to this district; The events at issue have arisen and will arise in this district; and Chanel is suffering harm in this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.    Chanel's Business and Iconic CHANEL Marks**

13.     Chanel is one of the world's most famous luxury fashion and beauty brands.  Chanel is the exclusive owner in the U.S. of the iconic CHANEL Marks, among other intellectual property, some of which have been in use for over 100 years.

14.     Chanel is also the exclusive owner of numerous U.S. Trademark Registrations, for the CHANEL Marks, in connection with a variety of goods and services, including, among many others, the following registrations for jewelry, hair accessories, and clothing:

| MARK | REG. NO. | REG. DATE | RELEVANT GOODS |
|---|---|---|---|
|  | 1501898 | 08/30/1988 | *Inter alia*, costume jewelry (Class 14) and brooches, buttons for clothing, and keychains (Class 26) |
|  | 4241822 | 11/13/2012 | Clothing (Class 25) |
|  | 1241264 | 06/07/1983 | *Inter alia*, Tee-Shirts (Class 25) |
|  | 1271876 | 03/27/1984 | Clothing (Class 25) |
|  | 3025934 | 12/13/2005 | Hair accessories, namely, barrettes (Class 26) |
| CHANEL | 902190 | 11/10/1970 | Bracelets, pins, and earrings (Class 14) |
| CHANEL | 3133139 | 08/22/2006 | Jewelry and watches (Class 14) |
| CHANEL | 3134695 | 08/29/2006 | *Inter alia*, hair accessories, namely, barrettes (Class 28) |
| **CHANEL** | 612169 | 09/13/1955 | Necklaces (Class 14) |

15.     All of the above trademark registrations are valid, subsisting, in full force and effect, and incontestable.

16.     Chanel has expended an enormous amount of effort, time, and money in developing and promoting the CHANEL Marks, which have come to symbolize the highest standard in quality with respect to handbags, fragrances, cosmetics, apparel, footwear, accessories, jewelry, and other goods and services offered by Chanel.

17.     Among many other goods and services, Chanel has long provided costume jewelry bearing the CHANEL Marks. The CC Monogram has been a featured element of much of Chanel's costume jewelry for decades.

18.     The CHANEL Marks and products and services bearing the marks are and have been the subject of extensive advertising and promotional campaigns in print publications, billboards, television advertisements, internet advertising, and other promotions reaching nearly every segment of the U.S. consumer.  In addition to being sold in Chanel's brick and mortar retail stores, products bearing the CHANEL Marks are promoted and sold online at Plaintiff's e-commerce website, www.chanel.com, and promoted on Chanel's related social media pages such as Facebook, YouTube, Twitter, Instagram, and others.  Product branded with the CHANEL Marks is also promoted and sold via authorized high-end retail stores, including, but not limited to, Neiman Marcus, Bergdorf Goodman, and Saks Fifth Avenue, and associated internet websites such as www.neimanmarcus.com, www.bergdorfgoodman.com, and www.saksfifthavenue.com. The CHANEL Marks and related goods and services have been the subject of extensive media and press attention for decades in the U.S. and worldwide.

19.     In the last 7 years alone, Chanel's sales of costume jewelry and clothing bearing the CHANEL Marks in the United States have exceeded $1 billion.

20.     As a result of the high quality nature of Chanel's goods and services and Plaintiff's longstanding and widespread use, extensive promotion, advertising, and media attention relating

to its CHANEL Marks and its goods and services, the CHANEL Marks have achieved enormous goodwill of great value to Chanel and have become instantly recognizable by the public. The CHANEL Marks are exclusively associated with Chanel and its luxury goods and services and are famous as a matter of law. The CHANEL Marks achieved fame long before Defendants began their unauthorized use of the marks.

21.     The fame of the CHANEL Marks has been recognized by various tribunals, including the United States Patent and Trademark Office, the Trademark Trial and Appeal Board, and this Court.

**B.     Defendants' Business and Misappropriation of the CHANEL Marks**

22.     Defendants have manufactured, promoted, and sold counterfeit, infringing, and/or unauthorized products that intentionally bear designs that are identical or substantially indistinguishable from the CHANEL Marks (hereinafter, collectively referred to as the "Infringing Products") in an obvious and deliberate attempt to unfairly capitalize and trade on the popularity and goodwill of the Chanel brand.

23.     Defendants have sold the Infringing Products on various platforms, including the following (of which Chanel is presently aware):

23.1    An Instagram account located at @neely.mullins

23.2    An Instagram account located at @shopvillo

23.3    An Instagram account located at @vccjewels

23.4    A TikTok account located at @neelymullins

23.5    A Facebook account for the entity Villo & Co., LLC

23.6    A Facebook account located at www.facebook.com/queenneezcreations

23.7    A website located at www.villoco.com

23.8    A website located at www.dev.villoco.com

23.9    A website located at www.vccjewel.com

24.    Defendants have sold jewelry and other products that they advertise as "authentic" designer items, a large proportion of which bear the CHANEL Marks.  For example, Villo's website, located at www.villoco.com (the "Villo Website"), represented:

> "We offer a wide range of jewelry from designer jewels to non designer jewels.  Our designer jewels are all 100% authentic.  They are repurposed from designer charms and buttons.  Since all our designer jewels are authentic, you can still wear authentic designer jewelry without the price tag of designer stores."

25.    Defendants have failed to disclose that the jewelry is created without the authorization of Chanel or that the items are not authenticated by Chanel.

26.    The Infringing Products include, but are not limited to, costume jewelry, hair accessories, and clothing.  For example, Defendants have taken buttons and other items bearing the CHANEL Marks (that are neither obtained from nor authenticated by Chanel) and incorporated them into chains, earrings, and other jewelry items that are advertised and sold as "Designer" jewelry.  To the extent that the buttons and items bearing the CHANEL Marks are from authentic Chanel products, these buttons and components are not intended or authorized for use by Defendants and are not intended or authorized for use as the featured element of the products created by Defendants, who have no relationship with Chanel.

27.    Defendants have made prominent use of the CHANEL Marks in the promotion of Defendants' Infringing Products, and the Infringing Products prominently display the CHANEL Marks.  Defendants are aware that the commercial interest in its products is based on the inclusion of the CHANEL Marks.

28.    Upon information and belief, Defendants have obtained a portion of the Chanel-branded products from unknown third-parties, which include counterfeiters and other resale businesses that are not authorized distributors of Chanel-branded products.

29.     Upon information and belief, Defendants do not have any process by which they may accurately verify and guarantee the authenticity of the products bearing the CHANEL Marks, or component parts bearing the marks.   Chanel has not authorized or approved Defendants' authentication or approval of secondhand Chanel products as genuine.   Chanel is not involved in authenticating or approving any products sold by Defendants and does not offer any guarantee to Defendants' consumers that any products sold by Defendants are authentic or approved by Chanel.

30.     To a consumer, there is no distinguishable difference between the appearance of Defendants' Infringing Products and Chanel's genuine products, such as those shown in the representative examples below:

| Examples of Chanel's Genuine Products | Examples of Defendants' Infringing Products |
|---|---|
|  |  |
|  |  |

| Examples of Chanel's Genuine Products | Examples of Defendants' Infringing Products |
|---|---|



31.    Defendants have sold the Infringing Products since at least July 21, 2020, on which date Defendants made multiple posts to the Villo Facebook account featuring images of the Infringing Products for sale:



32.    Since then, Defendants have continued to manufacture, distribute, advertise, and sell the Infringing Products, despite having received multiple cease and desist notices from Chanel and making multiple representations to Chanel that they would cease the promotion and sale of all unauthorized and Infringing Products.

33.    The CHANEL Marks and Infringing Products are prominently featured on Defendants' websites and social media accounts.  The profile image on the home page of Villo's

website, located at https://www.dev.villoco.com/ (the "Second Villo Website"), features an image

of products bearing the CHANEL Marks:



34.     The "About the Brand" section on the Second Villo Website exclusively displays

images of the Infringing Products featuring the CHANEL Marks



## ABOUT THE BRAND

Here at Villo & Company, we offer a wide range of jewelry. All of our designer jewelry is
made from authentic designer charms and buttons that repurposed into unique jewelry
styles.

35.     Indeed, twelve of the eighteen images on the Second Villo Website homepage feature images of Infringing Products bearing the CHANEL Marks, including those next to copy that claims the products are "100% authentic" "designer jewels," as shown below. The website also boasts that one of Defendants' "best sellers" is a necklace bearing the CHANEL Marks.

1/31/23, 6:22 PM                                    Home – Villo & Co

### HAND-MADE JEWELRY



All of our V&C Jewelry is handmade in Dallas, Texas. We offer a wide range of jewelry from designer jewels to non designer jewels. Our designer jewels are all 100% authentic. They are repurposed from designer charms and buttons. Since all our designer jewels are authentic, you still can wear authentic designer jewelry without the price tag of designer stores. If you are interested in customizing any piece, DM me on Instagram or Email me. We offer discounts for large orders on bridesmaid gift.

CONTACT FOR CUSTOMIZATION REQUEST

36.     In addition to online sales, Defendants have sold the Infringing Products in person at "pop up shops" and festivals around the country.  For example, in or around December 2021, Mullins posted to an Instagram account located at @neely.mullins showing that she was selling the Infringing Products in Denver, Colorado.  In or around April 2022, Mullins made another post on her Instagram account showing that she had been selling the Infringing Products at the Arts in Bloom Festival in McKinney, Texas.  In or around May 2022, Mullins made another post on her Instagram account showing that she had been selling the Infringing Products at y&i clothing boutique in Plano, Texas.

37.     Upon information and belief, Defendants also ship the Infringing Products nationwide.  For example, on May 11, 2022, Defendants fulfilled and shipped an order for two of the Infringing Products, listed on the Villo Website as "Pink CC Logo Bangle Bracelet" and

"White Diamond CC Heart Necklace," to New York, New York.  The package's return address is listed as Neely Mullins, Villo & Co., 9330 Emberglow Lane, Dallas, Texas 75243, and was delivered to New York, New York on or about May 20, 2022.  A true and accurate copy of screenshots of the Order Confirmation and photos of the package, Packing Slip, and purchased Infringing Products is attached hereto as **Exhibit A**.

**C.    Defendants Refuse to Cease Their Unauthorized Use of the CHANEL Marks.**

38.    On June 8, 2022, Chanel sent Mullins a letter (the "First Notice") explaining that Defendants' unauthorized use of the CHANEL Marks for the sale of costume jewelry and hair accessories bearing the CHANEL Marks violates Chanel's exclusive trademark rights and demanding, among other things, that Defendants discontinue and cease the use of the CHANEL Marks and sale of all unauthorized and Infringing Products bearing the CHANEL Marks, and confirm in writing that they will not to engage in the same conduct in the future.

39.    Defendants did not respond to The First Notice by June 17, 2022, as requested. Thus, on July 13, 2022, Chanel sent another letter to Mullins (the "Second Notice"), requesting that she respond to the First Notice and comply with the demands made therein.  On that same day, and in response to the Second Notice, Mullins voluntarily agreed that Defendants would remove all Infringing Products by the end of the day and comply with the requests in the First Notice.

40.    On July 19, 2022, Mullins agreed that Defendants would execute a letter confirming their compliance with Chanel's requests and indicating, among other things, their promise to cease all use of the CHANEL Marks and all further sales of products bearing the CHANEL Marks or any other Chanel-owned trademark (the "Agreement").

41.    On July 28, 2022, having not received the signed Agreement from Defendants, Chanel sent an e-mail to Mullins requesting a copy of the executed Agreement.  To date,

Defendants have failed or refused to sign the Agreement and have failed or refused to further respond to correspondence from Chanel regarding the Infringing Products.

42.     Despite Mullins' agreement that Defendants would discontinue use of the CHANEL Marks and cease sale of all products bearing the CHANEL Marks, Defendants continued to advertise and sell the Infringing Products, and began promoting and selling Infringing Products on additional websites and social media sites.

43.     For example, on August 14, 2022, Mullins posted an advertisement for the sale of the Infringing Products to a TikTok account located at @neelymullins and directed consumers to shop for the advertised items at a new website located at www.vccjewel.com (the "VCC Website").

44.     In September 2022, Chanel learned that Defendants had continued to manufacture and sell the Infringing Products on the Villo Website and additional platforms, including, but not limited to, an Instagram account located @shopvillo.  Chanel also learned that Defendants had added additional Infringing Products for sale on other various platforms, including, but not limited to, an Instagram account located at @vccjewels, a Facebook account located at https://www.facebook.com/queenneezcreations, and the VCC Website.  As of the date of this filing, the domain name www.villoco.com redirects to the VCC Website located at www.vccjewels.com.  Some of the Infringing Products that have been sold on these platforms include counterfeit components that were not sourced from genuine Chanel products.  Upon information and belief, all of these accounts and websites are run by Mullins on behalf of Defendants.

45.     Just months after receipt of Chanel's Second Notice and Mullins' agreement that Defendants would cease sale of the Infringing Products, Defendants fulfilled another order for one of the Infringing Products, listed on Defendants' new VCC Website as "Diamond CC Logo

Necklace," to New York, New York.  That order was placed on September 7, 2022, and delivered to New York, New York on or about September 28, 2022.  The package's return address was listed as Neely Mullins, Villo & Co., 9330 Emberglow Lane, Dallas, Texas 75243.  A true and accurate copy of a screenshot of the Order Confirmation and photos of the package and purchased Infringing Product is attached hereto as **Exhibit B**.

46.     On November 9, 2022, Chanel, by and through the undersigned counsel, sent a letter to Mullins (the "Third Notice"), once again objecting to Defendants' continued manufacture and sale of the Infringing Products—despite full and repeated notice of Chanel's rights and objections to Defendants' conduct—and reiterating the demands made by Chanel in the First and Second Notices.  The Third Notice further demanded a response from Defendants or their counsel within five business days to arrange their compliance with the demands set forth therein.

47.     On November 10, 2022, Mullins sent an e-mail, in response to the Third Notice, representing that she had deleted all of the online accounts via which the Infringing Products were promoted and sold, (with the exception of the Instagram account that she represented she was "working on deleting"), and had removed the Infringing Products from sale.  On the same day, Chanel again reiterated its request that Mullins return an executed copy of the Agreement and provide the requested information about the manufacture and sale of the Infringing Products.

48.     Having received no further response from Mullins, on November 17, 2022, Chanel's counsel sent its final demand to Mullins.  To date, Mullins has not responded or provided the executed Agreement or the information requested and has continued to promote and sell the Infringing Products.

49.     Thereafter, in January 2023, Defendants fulfilled another order for the Infringing Products, despite Mullins' multiple representations that Defendants would discontinue and cease

sale of all products bearing the CHANEL Marks.  Defendants fulfilled an order for one of the Infringing Products, listed on the Second Villo Website, as "Chunky CC Necklace," to Fort Worth, Texas.  The order was originally placed on November 23, 2022, and was delivered on January 7, 2023.  The package's return address was listed as Neely Mullins, Villo & Co., 9330 Emberglow Lane, Dallas, Texas 75243.  A true and accurate copy of a screenshot of the Order Confirmation and photos of the package and purchased Infringing Product is attached hereto as **Exhibit C**.

50.     In or around February 2023, Defendant fulfilled another order for two of the Infringing Products, listed on the Second Villo Website, as "Blue CC Cropped Tee" and "Pink Diamond CC Locked Necklace," to Long Beach, New York.  The order was originally placed on February 2, 2023 and delivered on February 25, 2023.  The package's return address was listed as Neely Mullins, Villo & Co., 9330 Emberglow Lane, Dallas, Texas 75243.  A true and accurate copy of a screenshot of the Order Confirmation, e-mail correspondence with Mullins regarding shipping information and available sizes of the purchased Infringing Products, and photos of the package and purchased Infringing Product is attached hereto as **Exhibit D**.

51.     To date, Chanel has received purchases of four different pieces of jewelry bearing components containing the CHANEL Marks. Chanel has assessed the authenticity of the components bearing the CHANEL Marks and has determined that they are all counterfeit.

## CAUSES OF ACTION

### COUNT I
**Willful Trademark Infringement in Violation of 15 U.S.C. § 1114(1)**

52.     Chanel repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

53.     Defendants' unauthorized use of the CHANEL Marks to promote and sell goods that are identical or related to those that are the subject of Chanel's trademark registrations and are

identical in type to those provided by Chanel bearing the registered CHANEL Marks has and/or is likely to cause confusion or mistake or deceive Defendants' consumers or potential consumers and the public as to the source or sponsorship of Defendants' goods.

54.     Defendants' activities have and/or are likely to lead to or result in consumer confusion, mistake, or deception, and are likely to cause consumers and the public to believe that Plaintiff has produced, sponsored, authorized, authenticated, licensed or otherwise approved Defendants' use of the CHANEL Marks and/or sale of the Infringing Products.

55.     Defendants were on both actual and constructive notice of Chanel's exclusive rights in use of the CHANEL Marks prior to their own unauthorized use of the CHANEL Marks.

56.     Defendants' use of the CHANEL marks has been willful, in bad faith, and with full knowledge of the goodwill and reputation associated with the CHANEL Marks, and with full knowledge that Defendants have no right, license, or authority to use the CHANEL Marks or any other mark confusingly similar thereto.

57.     Defendants' conduct has been and/or is intended to reap the benefit of the goodwill that Chanel has created in its CHANEL Marks and constitutes infringement of Chanel's federally registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

58.     Defendants' conduct has caused and is causing immediate and irreparable injury to Chanel and, unless enjoined by this Court, will continue to both damage Chanel and is likely to confuse or deceive the public.  Chanel has no adequate remedy at law.

**COUNT II**
**Trademark Counterfeiting in Violation of 15 U.S.C. § 1114(1)**

59.     Chanel repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

60.     Defendants have and continue to promote, advertise, distribute, sell, and/or offer for sale jewelry, clothing and hair accessories bearing one or more of the registered CHANEL Marks and/or marks that are substantially indistinguishable from one or more of the registered CHANEL Marks.

61.     Defendants' conduct has caused, is likely to cause, and actually is causing confusion, mistake, and deception among the general consuming public as to the origin, authenticity, and quality of Defendants' Chanel-branded goods.

62.     Defendants' conduct has been and/or is intended to unfairly trade upon the fame and goodwill that Chanel has created in its Chanel brand and CHANEL Marks and constitutes counterfeiting of Chanel's federally registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

63.     Defendants' conduct has caused and is causing immediate and irreparable injury to Chanel and, unless enjoined by this Court, will continue to both damage Chanel and is likely to confuse or deceive the public.  Chanel has no adequate remedy at law.

## COUNT III
### False Association in Violation of 15 U.S.C. § 1125(a)(1)(A)

64.     Chanel repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

65.     Defendants' use of the CHANEL Marks to promote and sell its unauthorized products constitutes false designation of origin or false or misleading description or representation of fact with respect to the origin and authenticity of Defendants' goods.

66.     Defendants' use of the CHANEL Marks has and/or is likely to cause confusion, mistake, or deception as to the source of Defendants' goods and has and/or is likely to create the

false impression that Defendants are affiliated with Chanel or that their goods are authorized, sponsored, authenticated, endorsed, licensed by, or affiliated with Chanel.

67.    Defendants' actions constitute false association in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

68.    Defendants' unauthorized use of the CHANEL Marks to promote and sell their products harms the value, exclusivity, and reputation of the CHANEL Marks.

69.    Upon information and belief, Defendants have received revenues and profits arising out of their acts of false association, to which they are not entitled.

70.    Defendants' conduct has caused and is causing immediate and irreparable injury to Chanel and will continue both to damage Chanel and deceive the public, unless enjoined by this Court.  Chanel has no adequately remedy at law.

**COUNT IV**
**False Advertising in Violation of 15 U.S.C. § 1125(a)(1)(B)**

71.    Chanel repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

72.    In representing to that the Infringing Products are "100% authentic" and "designer" goods, when Defendants have and continue to sell merchandise that is counterfeit and/or not obtained from, or authenticated by Chanel, Defendants are falsely and/or misleadingly representing that its products or their significant component parts have been inspected, authenticated, and/or guaranteed by Chanel and/or guaranteed or authenticated as genuine Chanel-branded merchandise.

73.    In doing so, Defendants are misrepresenting the nature, characteristics, and/or qualities of certain of its goods and services and its commercial activities.

74.     Upon information and belief, Defendants have made these false and misleading representations to take advantage of Chanel's renown and reputation to induce consumers to purchase Defendants' products.

75.     Defendants' false and/or misleading statements have and/or are likely to cause confusion or to deceive and mislead consumers into falsely believing that Defendants offer products that are associated, affiliated, endorsed, approved, authenticated, and/or verified by Chanel to include authentic Chanel items and have affected consumer's purchasing decisions.

76.     Defendants' directly and implicitly false and misleading statements regarding the authenticity and source of their goods and services have caused and are likely to cause consumers to falsely believe that Chanel or another qualified source verified the authenticity of the products bearing the CHANEL Marks (or the component parts that include the CHANEL Marks), when, in fact, Chanel has not done so or authorized or trained Defendants to do so.

77.     Defendants' actions constitute false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

78.     Defendants' use of the CHANEL Marks in connection with their own products harms the value, exclusivity, and reputation of the CHANEL Marks.

79.     Upon information and belief, Defendants received revenues and profits arising out of their acts of false advertising, to which they are not entitled.

80.     Defendants' conduct has caused and is causing immediate and irreparable injury to Chanel and will continue both to damage Chanel and deceive the public, unless enjoined by this Court.  Chanel has no adequately remedy at law.

**COUNT V**
**Trademark Dilution in Violation of 15 U.S.C. § 1125(c)**

81.     Chanel repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

82.     As a result of extensive use and promotion of the CHANEL Marks and the promotion and sale of goods and services offered thereunder by Chanel for decades, each of the CHANEL Marks is famous throughout the United States, is highly distinctive of Chanel's goods, and is widely recognized among the consuming public as a designation of source of Chanel's goods.   The CHANEL Marks became famous long before Defendants commenced their unauthorized use of the CHANEL Marks as described herein.

83.     Defendants' commercial use of the CHANEL Marks on and in connection with the promotion and sale of the Infringing Products has diluted, is diluting, and/or is likely to dilute Chanel's famous marks by impairing their distinctiveness, thereby lessening the capacity of the marks to identify and distinguish Chanel exclusively as the source of Chanel's genuine goods and services.

84.     Defendants' commercial use of the CHANEL Marks on and in connection with the promotion and sale of Defendants' products has diluted, is diluting, and/or is likely to dilute Chanel's famous CHANEL Marks by harming the reputation of the marks, thereby damaging the good reputation of Chanel and the CHANEL Marks.

85.     Defendants' conduct as described herein has been willful and deliberate, commencing long after each of the CHANEL Marks become famous, and with an intent to reap the benefits of Chanel's goodwill in the CHANEL Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

86.     Defendants' conduct has caused and is causing immediate and irreparable injury to Chanel and will continue to damage Chanel unless enjoined by this Court.  Chanel has no adequate remedy at law.

**COUNT VI**
**Trademark Infringement and Unfair Competition in Violation of New York Common Law**

87.     Chanel repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

88.     Defendants have used the CHANEL Marks with full knowledge of Chanel's prior rights in the marks and of the fame and success of Chanel's goods and services sold under and bearing the marks.  Defendants' use of the CHANEL Marks is for the willful and calculated purpose of misappropriating and trading on Chanel's goodwill and business reputation.

89.     Defendants have used the CHANEL Marks for the willful and calculated purpose of causing confusion and mistake among the public and of deceiving the public as to the nature and origin of Defendants' products in violation of Chanel's rights under the common law of the State of New York.

90.     Defendants were on notice of Chanel's exclusive rights in the CHANEL Marks before using the marks on and in connection with promotion and sale of their products by virtue of Chanel's open sale and use of the CHANEL Marks, federal trademark registrations for the marks, and repeated notices from Chanel objecting to Defendants' unauthorized use of the CHANEL Marks.

91.     Accordingly, Defendants' use of the CHANEL Marks is willful, in bad faith, and with full knowledge of Chanel's prior use of, exclusive rights in and ownership of the CHANEL Marks, and with full knowledge of the reputation and goodwill associated with the marks.

92.     By using the CHANEL Marks without authorization, Defendants have been and continue to be unjustly enriched and Chanel has been and continues to be damaged.

93.     The aforesaid conduct of Defendants constitutes trademark infringement and unfair competition under the common law of the State of New York.

94.     Defendants' conduct has caused and is causing immediate and irreparable injury to Chanel and will continue to both damage Chanel and to deceive the public unless enjoined by this Court.  Chanel has no adequate remedy at law.

**COUNT VII**
**False Advertising in Violation of N.Y. Gen. Bus. Law § 350**

95.     Chanel repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

96.     By reason of the acts set forth above, Defendants have been and are engaged in consumer-oriented advertising and marketing in the conduct of its business, trade, and/or commerce that is false and misleading in material respects, in violation of Section 350 of the New York General Business Law.

97.     Upon information and belief, Defendants have made these false and misleading representations to take advantage of Chanel's renown and reputation to induce consumers to purchase Defendants' Infringing Products.

98.     Defendants' conduct described herein has caused and is causing irreparable injury to Chanel, both by direct diversion of sales and by harming the CHANEL Marks and Chanel's goodwill and reputation, and will continue to damage Chanel and deceive and harm the public unless enjoined by this Court.  Chanel has no adequate remedy at law.

**COUNT VIII**
**Trademark Dilution in Violation of N.Y. Gen. Bus. Law § 360-*l***

99.    Chanel repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

100.    As a result of extensive use and promotion of the CHANEL Marks and the goods offered thereunder by Chanel for decades, each of the CHANEL Marks is famous throughout the United States, is highly distinctive of Chanel's goods, and is widely recognized among the consuming public as a designation of source of Chanel's goods.  The CHANEL Marks became famous long before Defendants commenced their unauthorized appropriation of the CHANEL Marks as described herein.

101.    Defendants' commercial use of the CHANEL Marks on and in connection with the sale of its products has diluted, is diluting, and/or is likely to dilute Chanel's famous marks by impairing their distinctiveness, thereby lessening the capacity of the marks to identify and distinguish Chanel exclusively as the source of the products.

102.    Defendants' commercial use of the CHANEL Marks on and in connection with the sale of its products also has diluted, is diluting, and/or is likely to dilute Chanel's famous CHANEL Marks by harming the reputation of the marks, thereby damaging the good reputation of Chanel and the CHANEL Marks.

103.    Defendants' conduct as described herein has been willful and deliberate, commencing long after the CHANEL Marks become famous, and with an intent to reap the benefits of Chanel's goodwill and dilute the distinctiveness of the CHANEL Marks in violation of Section 360-*l* of the General Business Law of the State of New York.

104.    Defendants' conduct has caused and is causing immediate and irreparable injury to Chanel and will continue to damage Chanel unless enjoined by this Court.  Chanel has no adequate remedy at law.

**WHEREFORE**, Plaintiff Chanel, Inc. respectfully demands judgment as follows:

1.    That a permanent injunction be issued enjoining Defendants from:

(a)    Using the CHANEL Marks or any marks that constitute a simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of the CHANEL Marks, or any other intellectual property owned by Chanel in connection with the promotion or sale of any goods or services;

(b)    Selling, offering, advertising, marketing, distributing, disseminating, or otherwise providing any product that bears any mark that is a simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of the CHANEL Marks;

(c)    Marketing, promoting, or advertising any goods and services in a manner that causes consumers to believe that Defendants are associated or affiliated with Chanel in any way or that Defendants' goods have been approved or authenticated by Chanel or individuals affiliated with Chanel;

(d)    Disseminating any false and/or misleading information relating to the authenticity, nature, or origin of Defendants' goods and services with respect to Chanel;

(e)    Disseminating any false and/or misleading information about Defendants' products, Chanel, the CHANEL Marks, and/or Chanel products;

(f)    Engaging in any activity constituting counterfeiting of CHANEL Marks under the Lanham Act;

(g)    Engaging in any other activity constituting false advertising, including but not limited to representations that its products or services include or consist of authentic Chanel items or items derived from authentic or genuine Chanel products;

(h)    From otherwise diluting or tarnishing the CHANEL Marks or Chanel's business reputation;

(i)    From otherwise infringing any of Chanel's intellectual property;

(j)     Engaging in any other activity constituting false endorsement or false affiliation with Chanel and/or the CHANEL Marks;

(k)     Engaging in any other activity constituting unfair competition with Chanel; and

(l)     Assisting, aiding, or abetting any other person of business entity in engaging in or performing any of the activities referred to in subparagraphs (a) to (k) above.

2.     That the Court issue an order directing Defendants to deliver to Plaintiff's undersigned counsel for remediation all products bearing any of the CHANEL Marks or any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of the CHANEL Marks, and any goods, labels, tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials bearing any of the CHANEL Marks or any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of the CHANEL Marks, currently in their possession or under their control or recalled by Defendants pursuant to any order of the Court.

3.     That Defendants account to Plaintiff for all gains, profits and advantages derived from Defendants' wrongful acts;

4.     That the Court issue an order directing that Defendants provide the following information to Plaintiff's undersigned counsel within ten (10) days after entry of judgment:

(a)     The total number of Infringing Products manufactured by Defendants or at their direction that bear the CHANEL Marks or marks or designs which are substantially indistinguishable from or confusingly similar thereto;

(b)     The total number of Infringing Products sold worldwide;

(c)     The total amount of revenue Defendants derived from the sale of the Infringing Products worldwide;

(d)     The total number of Infringing Products currently remaining in Defendants' inventory worldwide;

(e)     The identity and contact information for: any persons or entities who designed and/or supplied the Infringing Products; any persons or entities who distributed the Infringing Products; and any persons or entities from whom Defendants sourced the components bearing the CHANEL Marks that were used to create the Infringing Products.

5.     That the Court issue an order directing that Defendants filed with the Court and serve upon Plaintiff's undersigned counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which they have complied with the above.

6.     That the Court award Plaintiff monetary damages as follows:

(a)     Damages that Plaintiff has sustained or will sustain by reason of Defendants' acts of trademark infringement, trademark dilution, false association and advertising, and unfair competition;

(b)     All gains, profits, property, and advantages derived by Defendants from their unlawful conduct;

(c)     Statutory Damages in the amount of between $200,000-2,000,000 per counterfeit mark, per type of goods sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c);

(d)     Damages in an amount of three times the amount of actual damages sustained or of Defendants' profits, whichever is greater, pursuant to 15 U.S.C. 1117(b);

(e)     Exemplary and punitive damages to deter any further willful infringement as the Court finds appropriate;

(f)     Attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. 1117(a) and (b); and

(g)     Interest, including pre-judgment interest on the foregoing sums;

7.     That the Court award to Plaintiff such other and further relief as the Court may deem just and proper.

Dated: August 2, 2023
New York, NY

By:   */s/ Andrea L. Calvaruso*
      Andrea L. Calvaruso
      KELLEY DRYE & WARREN LLP
      3 World Trade Center
      175 Greenwich Street
      New York, New York 10007
      acalvaruso@kelleydrye.com

      *Attorneys for Plaintiff Chanel, Inc.*